UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO. 24-cr-402 (TNM) |
| | ) | |
| VERSUS | ) | |
| | ) | |
| BRANDON BARNHILL | ) | |
| | ) | |
| Defendant | ) | |

**SENTENCING MEMORANDUM**

The defendant, Brandon Barnhill, through undersigned counsel, Frank G. DeSalvo and Shannon R. Bourgeois, files this motion to give this Honorable Court an understanding of who Mr. Barnhill is and why this Court should give him whatever consideration this Honorable Court sees fit to give. This memorandum in no way intends to minimize or dispute Mr. Barnhill's improper conduct because he has full knowledge that his criminal acts were wrong and accepts full responsibility for his illegal behavior.

On December 5, 2024, Mr. Barnhill intends to plead guilty to two misdemeanors – disorderly and disruptive conduct in a capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D) and parading, demonstrating, or picketing in a capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G).

The sentencing hearing is also scheduled on December 5, 2024. At the sentencing hearing, the Court must "impose a sentence sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. §3553 and the factors underlying that statute. Those factors include:

"(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines-

(B) (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
(ii) that, except as provided in section 3742(g) [18 USCS § 3742(g)], are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a) (2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be

incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g) [18 USCS § 3742(g)], is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense." 18 U.S.C. §3553(a).

Taking these factors into account in the instant case, Mr. Barnhill begs this Honorable Court for leniency. Mr. Barnhill recognizes the Court is free to fashion his sentence in the way it finds just and fit, considering the nature of his criminal conduct, criminal background, his overall character, his mental health, strong familial ties, the likelihood defendant will continue to carry himself as a contributive and productive member of society, as well as general principles of fairness. Mr. Barnhill respectfully requests that the Court consider the aforementioned factors and avers that the §3553 factors support a non-incarceration sentence in this case. As such, Mr. Barnhill requests that the Court impose a sentence of two (2) years of probation to include community service, for the reasons discussed herein.

## PROCEDURAL HISTORY

On July 24, 2024, Brandon Barnhill was arrested in New Orleans, Louisiana for his participation in the insurrection at the United States Capitol on January 6, 2021. See R. Doc. 5. He made his initial appearance on a complaint before the duty magistrate in the Eastern District of Louisiana and was released on bond subject to pretrial supervision. See R. Doc. 6. On August 6, 2024, Mr. Barnhill made his first appearance in the District of Columbia before Magistrate Judge

Magistrate Judge Zia M. Faruqui. He was allowed to remain on bond. Mr. Barnhill has remained on bond without issue since that date.

On September 4, 2024, Mr. Barnhill was named in a two-count bill of information filed by the United States Attorney's Office in the District of Columbia charging him with: Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D), and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 § U.S.C. 5104(e)(2)(G). See R. Doc. 13. Mr. Barnhill's plea and sentencing is scheduled to take place before this Honorable Court on December 5, 2024.

**APPLICATION OF THE SENTENCING FACTORS**

The primary directive in § 3553(a) is that the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with" the purposes of sentencing. 18 U.S.C. § 3553(a) (emphasis added). Honest application of the federal sentencing statute confirms that a sentence of probation to include community service is sufficient but not greater than necessary to meet the goals of sentencing, for the reasons discussed herein.

**1. History and Characteristics of Mr. Barnhill**

Mr. Barnhill is presently employed by Hornbeck Offshore Services as an able seaman and deckhand. He has been so employed since February of 2024. He previously worked at Edison Chouest also as a seaman for approximately one (1) year. Prior to working at Edison Chouest, Mr. Barnhill worked at Auto Therapy as a diesel mechanic for approximately three (3) years.

Mr. Barnhill left high school in his junior year and elected to complete the Louisiana National Guard Youth Challenge Program in Carville, Louisiana. He graduated from this program at the top of his class instilled with values, life skills, education, and the self-discipline necessary

he needed to succeed as a productive citizen. He received diesel mechanic training through this program which made it possible for him to find his first job.

Mr. Barnhill recently married Cassie Barnhill. He supports both his wife and his brother, Cayden Barhill (20), with the income that he earns as a seaman. Mr. Barnhill is a dedicated spouse and brother. He and his wife hoped to start a family as soon as they were married, but elected to await the sentence imposed in this matter should Mr. Barnhill be incarcerated as a result of the crimes to which he intends to plead guilty.

Mr. Barnhill has been steadily employed since graduating from the Louisiana National Guard Youth Challenge Program in Carville, Louisiana. He has worked in a variety of roles, but has always worked, and worked hard, to support his family. Neither Mr. Barnhill nor his family would have imagined he would be pending sentencing in federal court. Nor could they have predicted that he would have traveled to Washington D.C. to participate in the Capitol insurrection in January 2021. Indeed, he has never been charged, much less convicted, for any crimes of violence or recklessness in the past. In fact, he has no criminal history whatsoever. There is nothing in Mr. Barnhill's background that would indicate the instant offense is part of an escalating pattern of criminal conduct nor the inception of one. Indeed, Mr. Barnhill's conduct on January 6, 2021, is an aberration from his otherwise lawful and productive life.

**2. Nature and Circumstances of the Offense**

Mr. Barnhill traveled to Washington, D.C. for January 6th because President Trump encouraged American citizens to do so. The President of the United States, the Commander-in-Chief, and the most recognizable figure in government stood told the electorate that the election was going to be stolen if they did not act. He stated without equivocation that the will of the

American people in choosing their next President had been subverted and that the future of the republic hung in the balance. Of course, none of this was true. However, for citizens like Mr. Barnhill, who got his news primarily from social media, it was a shocking revelation.

Keeping in mind the above, when Mr. Barnhill was offered the chance to travel to Washington D.C. for free by his employer, he jumped at the chance to attend the January 6, 2021, rally. At the time, he thought that his attendance would be a patriotic act and a once in a lifetime opportunity to travel to this country's capital. Unfortunately, Mr. Barnhill's actions on January 6th threatened the very democracy he sought to protect. He now recognizes that his actions that day were unpatriotic and also criminal. Bad information causes good people to do bad things, and Mr. Barnhill's decision to act on the bad information he received permanently changed the trajectory of his life—regardless of the formal sentence imposed by this Court.

On January 5, 2021, Mr. Barnhill traveled from Louisiana to Washington D.C. He spent the night in a hotel and in the morning walked to hear President Trump's speech at the rally. President Trump, after several minutes of reiterating his claims that the election was stolen, said the following to the crowd (including Mr. Barnhill):

> We will not let them silence your voices. We're not going to let it happen, I'm not going to let it happen.....We're gathered together in the heart of our nation's capital for one very, very basic and simple reason – to save our democracy....Now, it is up to Congress to confront this egregious assault on our democracy. And after this, ***we're going to walk down, and I'll be there with you***, we're going to walk down...I know that everyone here will soon be marching over to the *Capitol building* to peacefully and patriotically make your voices heard....And they want to recertify their votes...**But the only way that can happen is if Mike Pence agrees to send it back...If not...you will have an illegitimate President.** That's what you'll have. And we can't let that happen...**We must stop the steal** and then we must ensure that such outrageous election fraud never happens again....**And we fight. We fight like hell. And if you don't fight like hell, you're not going to have a country anymore.....So we're going to, we're going to walk down Pennsylvania Avenue...And we're going to the Capitol, and we're going to try and give them the kind of pride and**

**boldness that they need to take back our country.. So, let's walk down Pennsylvania Ave.**[1]

Mr. Barnhill joined the throngs of people walking towards the Capitol after President Trump's speech. He arrived on the Capitol's West Front and observed the rioting that had already ensued. Mr. Barnhill made his way through the entryway located at the Upper West Terrace—only one minute prior to Capitol police physically blocking off the entrance. He walked up stairs leading to the Capitol Rotunda and took photos with his phone. He exited through the East Doors. Mr. Barnhill was inside the Capitol for less than eight (8) minutes.

It is important to note that despite the violence of the crowd, Mr. Barnhill did not engage in violent conduct as an individual. Mr. Barnhill was not armed. He did not directly assault nor batter any members of law enforcement. He did not wrench any weapon rom an officer, beat an officer with a flagpole, or spray an officer. He did not personally push any member of the Capitol Police, move any barricades, or otherwise instigate any crowd violence. Instead, he formed a part of the crowd that eventually pushed into the Rotunda. But once inside for no more than a few minutes, Mr. Barnhill was ordered to leave by the Capitol police, and he did so without hesitation. Indeed, Mr. Barnhill did not come to Washington, D.C. on January 6, 2021, with the intent to engage in any violent activity, nor to enter the Capitol at all.

As Mr. Barnhill will admit, his actions on January 6, 2021, were reckless, dangerous, and illegal. Mr. Barnhill acknowledges and admits his complicity in this causing damage to the republic. He will have to bear the weight of that complicity for the rest of his life. Mr. Barnhill

[1] Associated Press, *Transcript of Trump's Speech at Rally Before US Capitol Riot*, U.S. News & World Report, Jan. 13, 2021, available at: https://www.usnews.com/news/politics/articles/2021- 01-13/transcript-of-trumps-speech-at-rally-before-us-capitol-riot.

knows and accepts that he was wrong, in both thought and action, and he is prepared to suffer the consequences that have and will continue to flow as a result.

However, in comparison to others at the Capitol that day, Mr. Barnhill's actual conduct does not warrant a period of incarceration. He has been punished and will be punished still regardless of the Court's sentence. Moreover, by all accounts, his involvement in the insurrection was inconsistent with his character. He had never been violent or reckless in such a manner previously. The disconnect between who Mr. Barnhill is and the crime he participated in is admittedly difficult to reconcile.

The Honorable Amit P. Mehta alluded to this issue in a sentencing hearing encouraging us all to ask ourselves why ordinary American citizens from all over the country with good backgrounds and steady jobs came together to commit these acts. United States v. Andrew Cavanaugh, 21-cr-362 (APM), Sentencing Transcript at 26-28. Judge Mehta opined that this was able to occur because of:

> [T]he power of propaganda; the power of being told lies over and over and over again; told by leaders who knew better that something was taken away from people when it wasn't...The idea that people who have otherwise led modest and humble lives, who have not been political agitators, political activists, are now facing serious jail time is extraordinary. Id.

Mr. Barnhill's aberrant conduct on January 6th is yet another example of the "power of propaganda" alluded to by Judge Mehta. Indeed, bad information causes good people to do bad things.

**3. The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment**

Despite the government's contention, punishment can be levied and suffered in a myriad of ways. Unfortunately, in federal criminal system, "punishment" and "imprisonment" are often used interchangeably. The reality is Mr. Barnhill's punishment has already begun and will continue long after his formal sentence is completed. The consequences of his conduct and conviction will follow him and his young family for the rest of his life.

However, Mr. Barnhill accepted responsibility for his actions despite the knowledge that he would suffer both direct and collateral consequences because of his convictions, including bearing the stigma of having been involved in the Capitol riot. He did so quickly and without any unnecessarily contesting the facts of the case. Mr. Barnhill's almost immediate acceptance of responsibility shows respect for the law. His lack of misconduct prior to January 6, 2021, evidences his respect for the law, as does his lack of misconduct since January 6, 2021. He has attended every Court date which shows not only his respect for the law, but his trust in the institution itself—something he did not fully have or grasp the significance of on January 6, 2021.

Finally, Mr. Barnhill's respect for the law will be apparent at the sentencing hearing in this case. His regret is evident, his remorse is sincere, and the lessons he has learned have been both difficult and worthwhile. A two-year probationary sentence would serve as a just punishment for his actual misconduct and given its duration and the associated deprivation of liberty, promote respect for the law among members of the public who may be considering engaging in similar behavior in the future. Both specific and general deterrence can be achieved by such a no incarceration sentence in this case, and therefore we urge the Court to consider it.

**4. The Need to Avoid Unwarranted Sentencing Disparities**

Section 3553(a)(6) instructs the Court to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." Because of the unprecedented nature of the events on January 6, 2021,the only similarly situated defendants available for comparison here are individuals who were also charged for their involvement in the Capitol insurrection. Therefore, the defendant, the government, and this Honorable Court are primarily restricted to intra-crime comparisons in the application of the § 3553(a)(6) factor here.

As has been done consistently in its January 6th sentencing memoranda, the government has submitted cases in which similarly charged January 6th defendants received more severe sentences, to include terms of imprisonment. Undersigned counsel follows suit here by submitting the following cases in which similarly charged January 6th defendants received non-incarceration sentences.[2] However, while intra-crime comparisons may marginally serve the purposes of § 3553(a)(6), the limitations of said analysis in this unique context are self-evident. There is no sentencing data that undersigned counsel could locate for defendants convicted of violating 40 U.S.C. § 5104 outside of the January 6th context—which creates the risk of a categorical, intra-crime sentencing determination, rather than an individualized one.

The defendant avers that an individualized sentencing is crucial in all cases, as it maintains the balance of justice, fairness, and effectiveness—protecting both criminal defendants and the integrity of the judicial system itself. Therefore, sentencing Mr. Barnhill based upon the sentences

[2] See United States v. Brittiany Dillon, 1:21-CR-00360-DLF; United States v. Jordan Stotts, 1:21-CR-00272-TJK; United States v. Kevin Strong, 1:32-CR-00114-TJK, United States v. Michael Carico, 1:21-CR-00696-TJK; United States v. Gabriel Burress, 1:21-CR-00744-TJK, United States v. Michael Hardin, 1:21-CR-00280-TJK; United States v. Robert Snow, 1:22-CR-00030-TJK; United States v. Walter Messer, 1:21-CR-00631-TJK.

received by other similarly charged January 6th defendants would deprive him of his right to an individualized application of the § 3553(a) factors to his specific case. Indeed, § 3553(a)(6) instructs Courts to consider the need to avoid considering his background and the nature of his actual conduct on January 6th, all of which merit a non-incarceration sentence here.

**5. The Kinds of Sentences Available**

In determining an appropriate sentence, § 3553(a)(3) directs the Court to consider all "the kinds of sentences available." Here, Mr. Barnhill will plead guilty to two Class B misdemeanors, each punishable by up to six-months imprisonment. The sentencing guidelines do not apply to Class B or C misdemeanors, and therefore the Court is limited only by the bounds of 40 U.S.C. § 5104. Under the statutes of conviction, Mr. Barnhill is eligible for and should receive a sentence of probation. Given the conditions available, a sentence of probation makes for a "substantial restriction of freedom." *See* Gall v. United States, 552 U.S. 38, 48 (2007). Conditions like community confinement or home detention may be imposed. The condition of "intermittent confinement" may also be imposed. *See* 18 U.S.C. § 3563(b)(10); *see also* U.S.S.G. §5F1.8. A condition of community service should be considered, and numerous other conditions will also attach. These conditions are "reasonably related to the sentencing factors set forth in [§ 3553(a)]." Such sentencing options should not be taken lightly and must factor into the Court's sentencing calculus. They do not undermine the law; but instead, are contemplated by it. They will minimize Mr. Barnhill's risk of recidivism and maximize the public's safety. All the while, they will ensure that he returns to the lawful path he walked prior to the instant offense, for his own sake as well as his family's.

**WHEREFORE, Brandon Barnhill**, for the reasons cited herein, moves this Honorable Court For the foregoing reasons, and others that will be presented at the sentencing hearing, the defense respectfully requests that the Court impose a sentence of two (2) years of probation with significant community service.

Attorney for Brandon Barnhill

/s/Frank G. DeSalvo
FRANK G. DeSALVO, APLC
FRANK G. DeSALVO, #4898
SHANNON R. BOURGEOIS, #30033
739 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 524-4191
Facsimile: (504) 821-0036
E-mail: frankd@fdesalvo.com
sbourgeois@fdesalvo.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following: Asst. United States Attorney Eli Ross, 555 4th Street NW, Washington, DC 20001. I further certify that I emailed the foregoing document and the notice of electronic filing by email to the following non-CM/ECF participants: N/A.

/s/ Frank G. DeSalvo

Frank G. DeSalvo
Shannon R. Bourgeois